UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X

SCOTT SAWIN,                                    :
                                                :        CASE NO.: _____
                        Plaintiff,              :
                                                :        COMPLAINT
        -against-                               :
                                                :        DEMAND FOR JURY TRIAL
CANCER GENETICS, INC., JOHN A.                  :
ROBERTS, GEOFFREY HARRIS, EDMUND                :
CANNON, HOWARD MCLEOD, and                      :
FRANKLYN G. PRENDERHAST,                        :
                                                :
                        Defendants.             :

------------------------------------------- X

Plaintiff Scott Sawin ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Cancer Genetics, Inc. ("CGI" or the "Company") and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with CGI, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed reverse merger between the Company and StemoniX, Inc. ("StemoniX"), following which CGI's Chief Executive Officer and President, John A. Roberts, will retain his role as Chief Executive Officer and President of the combined company.

2.      On August 21, 2020, CGI entered into an Agreement and Plan Of Merger and

Reorganization (the "Merger Agreement"), pursuant to which CGI Acquisition, Inc., a wholly-owned subsidiary of CGI, will merge with and into StemoniX, with StemoniX surviving as a wholly owned subsidiary of CGI (the "Proposed Transaction").

3.     Under the terms of the Merger Agreement, it is expected that the shareholders of StemoniX will become the majority owners of CGI's outstanding common stock upon the closing of the merger. Accordingly, following the merger, it is expected that the former StemoniX shareholders will hold approximately 78% of the outstanding shares of CGI Common Stock, and stockholders of CGI will retain ownership of approximately 22% of the Deemed Outstanding Shares (as defined in the Registration Statement). This equates to an Exchange Ratio of approximately 0.5541 shares of CGI common stock per one share of StemoniX common stock (the "Exchange Ratio").

4.     On October 16, 2020, in order to convince CGI's public common stockholders to vote in favor of the merger, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement contains materially misleading statements and omissions concerning: (i) the respective and post-merger companies' ownership structures; (ii) conflicts of interest; and (iii) fundamental valuation information.

5.     The shareholder vote will be scheduled in the coming weeks, as the Proposed Transaction is expected to close in the fourth quarter of 2020 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against

Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to CGI's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. This Court also has jurisdiction over the duty of candor claim pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's stock trades on the Nasdaq which is also

headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Defendant CGI is a Delaware corporation with its principal executive offices located at 201 Route 17 North, 2nd Floor, Rutherford, New Jersey 07070. The Company's common stock trades on the Nasdaq under the ticker symbol "CGIX."

12.     Defendant John A. Roberts is, and has been at all relevant times, the Chief Executive Officer and President of CGI.

13.     Defendant Geoffrey Harris is, and has been at all relevant times, the Chairman of the Board of Directors of CGI.

14.     Defendant Edmund Cannon is, and has been at all relevant times, a director of CGI.

15.     Defendant Howard McLeod is, and has been at all relevant times, a director of CGI.

16.     Defendant Franklyn G. Prenderhast is, and has been at all relevant times, a director of CGI.

17.     The defendants identified in paragraphs 12 through 16 are collectively referred to herein as the "Individual Defendants," and together with CGI, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Proposed Transaction

18.     CGI supports the efforts of the biotechnology and pharmaceutical industries to develop new drug therapies. CGI has an extensive set of anti-tumor referenced data based on predictive xenograft and syngeneic tumor models from the acquisition of *vivo*Pharm, Pty Ltd. ("*vivo*Pharm") in 2017, to provide Discovery Services such as contract research services, focused primarily on unique specialized studies to guide drug discovery and development programs in the

oncology and immuno-oncology fields.

19.     StemoniX develops and manufactures human induced pluripotent stem cell ("iPSC") based neural, cardiac and pancreatic screening platforms for drug discovery and development. Engineered from human skin and blood cells, iPSCs are made with in-licensed patented processes discovered by 2012 Nobel prize recipient Dr. Shinya Yamanaka. StemoniX's iPSC innovations are made from living human cells and have organ-like, or organoid, characteristics.

20.     On August 24, 2020, CGI authorized the announcement of the Proposed Transaction. The press release stated in relevant part as follows:

### StemoniX Therapeutics and CGI Therapeutics Announce Merger Agreement

RUTHERFORD, NJ and MAPLE GROVE, MN, Aug. 24, 2020 (GLOBE NEWSWIRE) -- Cancer Genetics, Inc. (the "Company") (Nasdaq: CGIX), and StemoniX, Inc., today announced the entry into a definitive merger agreement. Cancer Genetics is a leader in drug discovery and preclinical oncology and immuno-oncology services. StemoniX, a private company, is a leader in developing high-throughput disease-specific human organoid platforms integrated with leading-edge data science technologies. Under the terms of the merger agreement, StemoniX will merge with a newly formed subsidiary of Cancer Genetics in an all-equity transaction. Upon shareholder approval, the combined company expects to remain listed on the Nasdaq Stock Market. StemoniX will retain its name and become a wholly-owned subsidiary of Cancer Genetics.

The transaction will position the combined company to harness the synergies between two critical modalities of drug discovery and development - advanced animal models and relevant human high-throughput organoid platforms. The resulting integration of scientific and technology-based expertise, skilled management teams, and ability to offer customers an end-to-end platform will de-risk and accelerate development of preclinical and clinical pipelines for biopharma partners as well as for the proprietary pipeline of the combined company. In combination, Cancer Genetics and StemoniX currently enjoy partnerships and R&D relationships with dozens of global pharmaceutical and biotechnology companies.

"The process of discovering and developing a new drug candidate takes years and comes with a price tag of hundreds of millions - or even billions - of dollars.

However, we are at unique time in the drug discovery industry as the convergence of technological innovations in both biology and software will transform conventional workflows in time and accuracy. To convert the time-consuming and labor-intensive process of developing a drug for market, we now look to supplement traditional discovery and drug approval mechanisms to include humanized cell-based assays with artificial intelligence (AI) along with our core vivoPharm business. Given that our strategy and approach are strongly aligned with those of StemoniX, we are pleased to have moved forward with this proposed transaction," stated Jay Roberts, Chief Executive Officer of Cancer Genetics.

"The pharma industry and society are at a critical pivot point. Viral pandemics and diseases lacking treatments require a new way of innovation. The proposed merger expects to expand our ability to engage with a larger audience of potential partners and expand our internal capabilities as we deliver on our mission to rapidly discover the safest and most effective therapeutics on behalf of our partners and our shareholders. The mission will stay consistent - allow scientists to quickly and economically conduct high-throughput toxicity and drug development studies in ready-to-assay plates containing functional microOrgans®," stated Ping Yeh, Chief Executive Officer of StemoniX.

**ABOUT THE TRANSACTION**

Pursuant to the merger agreement, Cancer Genetics will acquire all of the outstanding capital stock of StemoniX in exchange for a number of shares of its common stock which will represent approximately 78% of the outstanding common stock of Cancer Genetics, subject to certain adjustments and prior to the effects of the financing referred to below, with the current equity holders of Cancer Genetics retaining 22% of the common stock immediately following the consummation of the merger.

The Boards of Directors of both companies have approved the proposed merger, which is expected to close in the fourth quarter of 2020, subject to the approval of the shareholders of both Cancer Genetics and StemoniX, financing and other customary closing conditions.

H.C. Wainwright & Co. is acting as financial advisors to the Board of Directors of Cancer Genetics, and Lowenstein Sandler is acting as its legal counsel. Northland Securities, Inc. is acting as financial advisor to the Board of Directors of StemoniX and Taft, Stettinius & Hollister is acting as its legal counsel.

21.     Far from maximizing stockholder value, the Proposed Transaction will incur

significant transaction costs, significantly dilute stockholders' equity ownership, and lead to a

decrease in the Company's overall market capitalization. The merger comes at an extraordinarily

6

inopportune time, creates substantial risks for the public common stockholders, and primarily benefits StemoniX. Indeed, "StemoniX has a history of operating losses and expects to incur significant and increasing losses for the foreseeable future, and may never achieve or maintain profitability." Reg. Stmt. at 32. Moreover, as stated in the Registration Statement:

> Management of StemoniX believes that conditions exist that raise substantial doubt about the ability of StemoniX to continue as a going concern, and the post-merger company will need to raise additional capital by issuing securities or debt or through licensing arrangements, which may cause significant dilution to the post-merger company's stockholders or restrict the post-merger company's operations or proprietary rights…

*Id.* Then on the following page:

> The lack of a public market for StemoniX shares makes it difficult to determine the fair market value of the StemoniX shares, and the stockholders of StemoniX may receive consideration in the merger that is less than the fair market value of the StemoniX shares and/or CGI may pay more than the fair market value of the StemoniX shares…

*Id.* at 33. Despite CGI ***potentially paying more than the fair value of their shares***, following the consummation of the merger, StemoniX will own approximately 78% of the post-merger company. The Proposed Transaction is unfair for minority stockholders.

22.     Nor is this merger in any way, shape, or form, fiscally responsible at a time when both companies are experiencing significant cash burn. As disclosed in the Registration Statement:

> Cancer Genetics has incurred and will continue to incur significant transaction costs in connection with the Merger. Cancer Genetics estimates that it will incur aggregate direct transaction costs of approximately ***$12.2 million*** associated with the Merger and approximately $0.2 million for its portion of shared transaction expenses, as well as additional costs associated with the commencement of the combined organization's operation as a public company, which cannot be estimated accurately at this time.

23.     Accordingly, CGI is burning millions of dollars to consummate a merger with an entity which also faces significant liquidity concerns. And "if StemoniX continues to experience operating losses, and it is not able to generate additional liquidity through a capital raise or other

cash infusion, StemoniX might need to secure additional sources of funds, which may or may not be available to it. Additionally, a failure to generate additional liquidity could negatively impact StemoniX's ability to operate its business." *Id.* Accordingly, not only are stockholders receiving potential less consideration than the Company is worth, but the entire decision is also fiscally unsound.

24.     There may significantly better options to maximize stockholder value, such as an asset sale to a larger biopharmaceutical company. Yet the Company has failed to obtain a fairness opinion or provide a liquidation analysis. Instead, the Board has blindfolded stockholders to alternative strategic initiatives and offered an inherently risky merger as the only possible decision. This is unsurprising in light of the conflicts of interest which the Board faced in negotiating the Proposed Transaction.

25.     As a result of the merger, the Company's Chief Executive Officer, John A. Roberts will continue to serve as the President and Chief Executive Officer of the combined company. Shockingly, despite this inherent conflict of interest, Defendant Roberts was the one who had negotiated the Exchange Ratio. As stated in the Registration Statement:

> In a contemporaneous telephone call on June 9, 2020 the Chairman of StemoniX and the Chief Executive Officer of CGI discussed the relative valuations of the companies. In ***subsequent drafts, the percentages were negotiated and eventually reached 78% and 22%, respectively. Additionally, the post-merger management composition was discussed in detail***, and the CGI Board was apprised of the rationale for the selected management of the post-merger company, based on individual skills, expertise, relative experience and history with each of the two companies (including the CGI subsidiary *vivo*Pharm).

Accordingly, Defendant Roberts was negotiating the Exchange Ratio, while concurrently negotiating his own post-merger employment. The following disclosures are therefore all the more crucial.

26.     Finally, the Company entered into deal devices which all about ensure a better offer

will not be forthcoming including non-solicitation agreements. Moreover, other interested parties are ***currently restricted by standstill agreements*** from making a better offer. And moreover, the Company will be forced to pay a $500,000 termination fee should it renege on the Merger Agreement.

27.     Piggybacking off the uncertainty of Pandemic, the Proposed Transaction may inordinately compensate StemoniX and reward the Individual Defendants, all at the expense of the Company's common stockholders. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for stockholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Transaction.

**B.   <u>The Registration Statement Omits Certain Material Information</u>**

28.     On October 16, 2020, Defendants authorized the filing of a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents or omits material information concerning the respective and post-merger companies' ownership structures, conflicts of interest, and fundamental valuation information. This information is necessary for CGI'S stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

29.     ***First***, the Registration Statement omits any meaningful way for stockholders to evaluate the fairness of the Proposed Transaction. Defendants have not obtained any fairness opinion for the Proposed Transaction, nor have they disclosed any projections, nor have they

conducted any financial analyses, nor have they provided an assessment of the Company's liquidation value. This is highly unusual, and the reason is straightforward: directors covet fairness opinions, which provides stockholders with knowledge that the merger is fair.

30.     While fairness opinions are not required by law, today's directors are typically unwilling to approve a transaction and let the shareholders assess the merits of the deal without one. As a result, "a fairness opinion from an investment bank" has become "a practical requirement to get the deal done." Troy A. Paredes, *Corporate Decisionmaking: Too Much Pay, Too Much Deference; Behavioral Corporate Finance, CEOs, and Corporate Governance*, 32 Fla. St. U.L. Rev. 673, 723 (Winter, 2005).

31.     In light of the other significant disclosure issues in the Proposed Transaction (as described below), stockholders ***must*** be provided with some bases to assess the fairness of the deal, whether that be in form of management projections or a liquidation analysis. Surely, the Board relied on some objective metrics while entertaining bids from other interested parties. In order to have an informed vote on the Proposed Transaction, stockholders must be provided with this information:

- Any and all financial projections created by management or MTS in assessing the Proposed Transaction;

- Any and all financial analyses conducted by MTS;

- Any liquidation analysis conducted on the Company and/or an assessment of the Company's assets.

32.     Management has meaningful insight into the Company's financial future that the market does not. By example, if projections for CGI for 2021 were to reveal a tremendous increase in cash flows, stockholders would be more apt to vote against the merger, and inversely the same holds true. By choosing to withhold the Company's projections, the Board has chosen to blindfold

stockholders to fundamental valuation information, and instead, left stockholders out in the dark with only market data for guidance. This is not a game of poker where a player must conceal his unexposed cards, the object of a Registration Statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed—and so must be disclosed.

33.     ***Second***, the Registration Statement fails to adequately identify the principal stockholders of the StemoniX on pages 236-237 of the Registration Statement. According to the Registration Statement, Sriram Nadathur, Robert Petcavich, and Yung-Ping Yeh, collectively, beneficially ***hold 114.3% ownership*** of StemoniX. Either this is a typographical error, or these directors hold an undisclosed and overlapping interest in StemoniX. The Registration Statement's failure to disclose StemoniX's ownership structure creates a materially misleading picture of the merger, as stockholders are being asked to dilute their ownership and enter into a combined entity with StemoniX without knowing who they are entering into business with.

34.     ***Third***, the Registration Statement fails to accurately disclose the expected ownership structure in the post-merger company. Indeed, when applying the Exchange Ratio to the current holdings of StemoniX's stockholders, the result is inconsistent and therefore materially misleading. CGI's stockholders have a clear and unambiguous interest in understanding how their shares are going to be treated following the merger and how their holdings will be impacted. The failure to disclose this information, or clarify it such that it is not misleading, is a violation of the federal securities laws.

35.     ***Fourth***, the Registration Statement omits all of StemoniX's projections, including its cash flow projections and projected revenues. This omission is especially egregious as StemoniX is a private company, and so stockholders have no means to evaluate the adequacy of

the Exchange Ratio compared to their current holdings in the Company (which trades on a public market). Stockholders are instead being asked to dilute their position in the Company, and to accept a new stake in a pro forma entity containing StemoniX. Indeed, without providing these cash flows, Company stockholders will receive a misleading picture about the projected returns from their new holdings in StemoniX.

36.     **Fifth**, the Registration Statement states that the Company was entering into confidentiality agreements with other bidders, and that some parties are still restricted by these standstill provisions. Yet, critically, the Registration Statement fails to disclose how many of these bidders are subject to standstill agreements and whether they contained 'Don't Ask, Don't Waive' ("DADW") provisions. The failure to plainly disclose the existence of DADW provisions and confidentiality agreements creates the false impression that any company could have made a superior proposal. If there are confidentiality agreements containing DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the 'total mix' of information. If these parties had previously made an offer for the Company, that offer too must be disclosed.

37.     Furthermore, there must be disclosure on the proposals and indications of interest for the Company to date, including:

> (1) the indications of interest and offers from potential purchasers of the *vivi*Pharm business segment;
>
> (2) the five (5) written proposals received by the CGI on or before November 25, 2019;
>
> (3) the indications of interest from the twelve (12) candidate companies for an

acquisition received by CGI on or before February 27, 2020;

(4) the indications of interest from the "2 companies [that] provided unsolicited offers without entering into confidentiality agreement"; and

(5) the indications of interest following the February 27, 2020 meeting.

38.     ***Sixth***, the Registration Statement omits what processes the Board undertook to ensure that the Exchange Ratio was fair and how they isolated the conflicts from Defendant Roberts. Considering that there is no fairness opinion and no financial analyses, should the Board not have taken steps to evaluate the fairness of the Proposed Transaction, then they have acted negligently in their role of directors and have breached their fiduciary duty of care to CGI stockholders. Moreover, had the Board not take steps to isolate the conflicts of Defendant Roberts, then they have acted negligently in their oversight role as Board members. Accordingly, this too, must be disclosed.

39.     ***Seventh***, the Registration Statement fails to disclose the amount of compensation paid to CGI's financial advisor H.C. Wainwright & Co., LLC (the "Wainwright"), relating to the underwritten public offering of 1,363,637 shares of the Company's common stock as agreed upon on October 28, 2020. Further, the Registration Statement fails to disclose the amount of compensation payable to Wainwright in its role of acting as financial advisor to the merger, which must also be disclosed.

40.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violation of Section 14(a) of the Exchange Act)

41.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44.    The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45.    Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the respective and post-merger companies'

ownership structures, conflicts of interest, and fundamental valuation information.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

47.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Indeed, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

48.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information

from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

49.     CGI is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

50.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of CGI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CGI, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

55.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

**(Against the Individual Defendants for Breach of Their
Fiduciary Duty of Candor/Disclosure)**

58.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

61.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public stockholders.

62.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

63.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: November 13, 2020             **MONTEVERDE & ASSOCIATES PC**

                                     */s/ Juan E. Monteverde*
                                     Juan E. Monteverde (JM-8169)
                                     The Empire State Building
                                     350 Fifth Avenue, Suite 4405
                                     New York, NY 10118
                                     Tel:(212) 971-1341
                                     Fax:(212) 202-7880
                                     Email: jmonteverde@monteverdelaw.com

                                     *Attorneys for Plaintiff*